UNITED STATES v. BUEHNE STEEL WOOL CO.

BUEHNE STEEL WOOL CO. v. UNITED STATES.

(Circuit Court, S. D. New York. March 5, 1907.)

Nos. 4,115, 4,389.

CUSTOMS DUTIES—CLASSIFICATION—STEEL WOOL.

> Construing Tariff Act July 24, 1897, c. 11, § 1, Schedule C, pars. 135, 137, 193, 30 Stat. 161, 167 [U. S. Comp. St. 1901, pp. 1638, 1639, 1645], which paragraphs provide, respectively, for "steel in all forms and shapes," for articles made from wire, and for manufactures of steel, *held*, that steel wool is dutiable under the first of these provisions, rather than either of the other two.

On Application for Review of a Decision of the Board of United States General Appraisers.

These are cross-appeals from G. A. 6,406 (T. D. 27,536), in which the Board of General Appraisers, one member dissenting, sustained the less favorable of the two contentions made by the importers against the assessment of duty by the collector of customs at the port of New York. The authority for this decision was Buehne v. U. S. (C. C.) 140 Fed. 772, which reversed a former decision of the Board (G. A. 5,927; T. D. 26,061), and the appeals from which were dismissed by the Circuit Court of Appeals (145 Fed. 1023, 74 C. C. A. 681). These proceedings involve the construction of the following provisions of Tariff Act July 24, 1897, c. 11, § 1, Schedule C:

"Par. 193. Articles or wares not specially provided for in this act, composed wholly or in part of iron, steel, * * * or other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem." 30 Stat. 167 [U. S. Comp. St. 1901, p. 1645].

"Par. 135. Steel ingots, cogged ingots, blooms, and slabs, by whatever process made; die blocks or blanks, billets and bars and tapered or beveled bars; mill shafting; pressed, sheared, or stamped shapes; saw plates wholly or partially manufactured; hammer molds or swaged steel; gun-barrel molds not in bars; alloys used for substitutes for steel in the manufacture of tools; all descriptions and shapes of dry sand, loam, or iron-molded steel castings; sheets and plates and steel in all forms and shapes not specially provided for in this act." 30 Stat. 161 [U. S. Comp. St. 1901, p. 1638].

"Par. 137. * * * Articles manufactured from * * * steel * * * wire shall pay the rate of duty imposed upon the wire used in the manufacture of such articles, and in addition thereto one and one-fourth cents per pound." 30 Stat. 161 [U. S. Comp. St. 1901, p. 1639].

The Board held the merchandise in controversy (steel wool) to be dutiable under the second of these provisions; the government contends that it was properly classified under the first; and the importers assign as error the failure of the board to sustain their alternative contention under the third.

J. Osgood Nichols, Asst. U. S. Atty., and W. Wickham Smith, for the United States.

Comstock & Washburn (Albert H. Washburn, of counsel), for importers.

HOUGH, District Judge. Study of the printed record confirms the impression that this case requires and will receive decision by the high appellate tribunals. I find nothing in this record, however, which enlarges previous knowledge as to the origin, nature, manufacture, or use of "steel wool." All that is newly brought forward is a technical description or explanation of the articles specifically enumerated in paragraph 135 of the tariff act of 1897 (Act July 24, c. 11, § 1, Schedule C, 30 Stat. 161 [U. S. Comp. St. 1901, p. 1638]), made by men for the most part engaged in the trades of manufacturing or selling, them. The argument based upon such evidence is not really that courts and appraisers have hitherto been misled as to the nature of steel wool, but that they have not given sufficient importance to the nature of the articles specifically enumerated in paragraph 135; and it is strenuously urged that, had such due consideration been given, it would have appeared that the catalogue of articles contained in that paragraph comprises the cruder or simpler products of a rolling mill, and that therefore the catch-all clause thereof should not be extended to include so highly manufactured an article as is here under consideration; i. e., steel wool or steel shavings.

It seems to me going too far to describe the articles of steel specifically enumerated in paragraph 135 as "crude," or even "simple," for many of them are of complex design, and all presuppose great inventive and mechanical skill, and are finished or completed in the sense that they are ready for the markets of the world. But it is true that as a class they are, though the finished products of the mill, but the raw material for some other metal industry—for the machine shop or the builder. No article there enumerated is ordinarily used by the final consumer, or put to its ultimate use, by the name or in the shape described by the name used in paragraph 135. If, therefore, the material of a steel ingot (dutiable under paragraph 135), after becoming a wire rod (dutiable under paragraph 136), and next wire (dutiable under paragraph 137), and finally steel wool, legally reverts in its ultimate form to the category from which it started (as it does by being considered a "form or shape of steel"), it is certainly difficult to see how any manufacture wholly of steel can ever be assigned to paragraph 193. In truth an "article * * * composed wholly * * * of steel" is necessarily a "form or shape of steel." To be sure, it is shown in this case that the word "shape" has a technical meaning and is applied to certain standard products of structural steel material— e. g., tees, angle bars, bulbs, etc. But no manufacturer could fill an order for steel forms or "forms of steel," so that the confusion between the two paragraphs obviously exists, unless the rule of ejusdem generis be applied to paragraph 135. With the Appraisers, who filed the decision appealed from, I feel the force of this reasoning, but perceive no facts in the present record authorizing a departure from (C. C.) 140 Fed. 772, while the legal reasoning above outlined can not be

reconciled with United States v. Binney, 82 Fed. 992, 27 C. C. A. 347.

It follows that the appeal of the United States cannot be sustained in this court.

The point raised by the importers' appeal has been decided adversely to it in previous cases ([C. C.] 140 Fed. 772); and it does not, in my opinion, bear further argument.

The importers' appeal is denied.