UNITED STATES *v.* PROSSER (No. 24).[1]

PIECES OF CAST STEEL.

> Pieces of cast steel upon which machine work had been done after being cast and so forming a combination of parts ready for immediate use in a cement mill are finished articles and are not "plates" as provided for under paragraph 135, tariff act of 1897, and were dutiable under paragraph 193 of that act.

United States Court of Customs Appeals, July 25, 1910.

APPEAL from a decision of the United States Board of General Appraisers, G. A. 6193 (T. D. 26835), T. D. 27493.

[Reversed.]

*D. Frank Lloyd*, Assistant Attorney General (*John A. Kemp* on the brief), for the United States.
*Brown & Gerry*, for the appellees.

Before MONTGOMERY, HUNT, SMITH, and BARBER, Judges.

HUNT, Judge, delivered the opinion of the court.

Prosser & Son imported into New York 84 cast-steel grinding parts, weighing about 1,000 pounds each, to be used in certain kinds of mills for grinding in the manufacture of cement.   Duty was assessed

---

[1] Reported in T. D. 30848 (19 Treas. Dec., 872).

by the collector at 45 per cent ad valorem under the provisions of paragraph 193 of the tariff act of July 24, 1897, which reads as follows:

Articles or wares not specially provided for in this act, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum or other metal, and whether partly or wholly manufactured, forty-five per cent ad valorem.

The importer contended that the proper duty is as prescribed by paragraph 135 of the aforementioned act, which reads as follows:

135. Steel ingots, cogged ingots, blooms, and slabs, by whatever process made; die blocks or blanks; billets and bars and tapered or beveled bars; mill shafting; pressed, sheared, or stamped shapes; saw plates, wholly or partly manufactured; hammer molds or swaged steel; gun-barrel molds not in bars; alloys used as substitutes for steel in the manufacture of tools; all descriptions and shapes of dry sand, loam, or iron-molded steel castings; sheets and plates and steel in all forms and shapes not specially provided for in this act * * *.

The Board of Appraisers sustained the importer's contention, and from the decision of the board, the United States prosecutes this appeal.

The argument of the learned Assistant Attorney General is that the Board of Appraisers erred in holding the materials in question to be dutiable as shapes, castings, plates, or steel in forms and shapes under paragraph 135, inasmuch as the term plate does not correctly describe the merchandise. It is said that while paragraph 135 as quoted provides for plates, yet it makes no provision for ball mill plates, or ball mill grinding plates, or plates which have been manufactured into definite forms and shapes, and made into pieces ready for special and definite use as parts of a ball mill; and in a more general way it is insisted that, when steel has been so far advanced in its manufacture that its use can only be for a definite purpose, and the piece as made can only be fitted to a particular machine, and in a particular part of such machine, then it has become an article of steel manufacture, and is to be held dutiable under paragraph 193 quoted.

Without stating the evidence at length, it appears therefrom that the materials involved are made of steel casting and are parts of a particular kind of ball mill for cement grinding. The several witnesses spoke of them as being called "plates," "lining plates," "ball mill plates," and "liners," the word plates being used apparently to give a more general designation of their character. Each of the "plates" is bolted to a side wall of the mill, 12 of them comprising the periphery of the mill. A set of balls is put into the mill as essential to completion and operation in grinding. Material is fed in by automatic feeder among the balls and the mill revolving throws the balls and pulverizes the rock or material between them. The importers do not assemble the pieces in this country, but after impor-

tation keep them in stock and ship them to wheresoever purchasers may desire. The mill plates are of uniform size and ready to go into the mills. Each piece or plate is made by putting the pattern in sand, and casting the steel into the mold made by the pattern. Then holes are drilled by machine and the edges are made true to fit. The process of manufacture is not by roller, but casting. The plates fit between two heads. The heads are keyed onto a main shaft and the base on which the plates fit to the heads is turned, so that when the heads are placed on the shaft the distance between the two heads is identically the same all around. As described, each plate is turned or ground on the end and on the edges of the flanges, so as to fit in a groove on a tread, and the plates must be made of the same length and perfectly true in order to fit. They must be bolted together to make a solid machine, the flanges being put on to make the bolting possible. The holes in the pieces are drilled perfectly true, the holes made equidistant from the center and so placed that when one piece or plate is worn out it can be taken out and another put in without any labor other than that of putting it in its place.

From these descriptions, it seems quite clear to us that the mill into which these pieces go is a combination of parts, the particular parts under consideration being irregular in shape, with machine work done after casting and before importation, each piece ready in the condition as imported for immediate use for the object for which it was intended.

The evidence of uniform and general commercial designation is not at all satisfactory. It does not justify a conclusion that the word plates commonly or sufficiently describes the articles in question. Hedden v. Richard (149 U. S., 346); United States v. Dudley (174 U. S., 670).

An order for the articles as plates would not be understood, ordinarily, unless special description was given to the seller. Ball mill plates, grinding plates would probably be enough of a qualification, but merely plates would not be, for the reason that plates are commonly understood to be steel plates that have not been made into another complete article of commerce. In United States v. Newman Wire Company (152 Fed. Rep., 488) Judge Hazel, distinguishing if not doubting a former ruling made by himself in Morris v. United States (140 Fed. Rep., 774) distinctly so held. See also United States v. Meier (136 Fed. Rep., 764). The court of appeals, in affirming Newman v. United States (159 Fed. Rep., 123), declined to hold that what was called a "draw plate" or "wortle" was within the provisions of the term plate, as meant by paragraph 135. It must be correct to say that although an article may be called a plate yet it can not be described as one unless it is plate.

It may be admitted that cases do arise in the construction of tariff laws where evidence of commercial designation and usage is so clear

as to compel a ruling that seems more in harmony with commercial or trade sense than with words as used in an ordinary way, but the evidence in the record before us does not warrant the application of such an interpretation.

Our judgment is that the articles involved are finished articles, not plates, as meant by the words "sheets and plates and steel in all steel castings," which refer to commodities at a lower stage of manufacture.

The judgment is *reversed,* with directions to proceed in conformity with this opinion.

DE VRIES, Judge, being disqualified, did not participate in the hearing or decision of the case.