# CASES ADJUDGED IN THE UNITED STATES COURT OF CUSTOMS APPEALS.

LUNHAM & MOORE *v.* UNITED STATES (No. 105). CENTRAL STAMPING Co. *v.* UNITED STATES (No. 272).[1]

FLAT PLATES OF STEEL MADE INTO VARIOUS SHAPES—PITCHERS, SPOUTS, ETC.

No commercial designation appearing, a variety of steel shapes ready to be enameled and converted into pitchers, knobs, handles, spouts, etc., is less aptly described as pressed, sheared, or stamped shapes, or as steel in all forms and shapes, than as articles or wares composed of steel, whether wholly or partly manufactured, for to hold otherwise would be to declare the nearly completed articles should have been admitted at the same rate of duty with the original flat sheets of steel; and the importations were dutiable as assessed under paragraph 193, tariff act of 1897.

## United States Court of Customs Appeals, May 1, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York Abstract 20951 (T. D. 29664), Abstract 18520 (T. D. 28889).

[Affirmed.]

*John Giblon Duffy* (*Joseph G. Kammerlohr* and *Comstock & Washburn* of counsel) for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*Thomas J. Doherty* on the brief), for the United States.

Before MONTGOMERY, HUNT; SMITH, BARBER, and DE VRIES, Judges.

BARBER, Judge, delivered the opinion of the court:

These cases involve the application of paragraphs 135 and 193 of the tariff act of July 24, 1897. It appears from the decision of the board and from such of the samples as have been submitted to us that the merchandise in the case of Lunham & Moore is a variety of steel shapes, such as pitchers, knobs, handles, spouts, covers, etc., and that in the Central Stamping Co.'s case it is metal spouts, such as are used in the manufacture of teapots, teakettles, etc. All of the merchandise is made from what were once flat plates of steel; some exhibits are composed of two or more pieces, and all have been subjected to several processes more or less elaborate according to the nature of the article, and in the form as imported they are articles, each ready and designed to become, after having been enameled, a part of the finished article, such as a kettle, teapot, or other enameled-ware product.

Reported in T. D. 31569 (20 Treas. Dec., 941)

We think it unnecessary to recite fully the several processes to which each article under consideration has been subjected before attaining its present form and shape. It suffices to say that in each instance the original flat shape, form, or plate of steel is cut or sheared to the proper size and form and then by successive processes in machines adapted thereto, which processes are designated as shearing, stamping, pressing, or spinning, as the case may be, the article is made to assume its completed form when imported; and if it is composed of more than one part, these parts are fastened together, and all are ready for the enameling process.

The process of enameling, as appears by the record, in substance, is this: The subject is dipped in a bath of muriatic acid to form a scale, this scale or layer of steel is taken off, then it goes through an acid bath, is pickled, washed, and dried, then receives a coat of enamel, which is allowed to dry, and is then subjected to heat in a furnace, which burns the enamel in.

For convenience, we insert here so much of the respective paragraphs as seems to be pertinent:

135. * * * pressed, sheared or stamped shapes; * * * all descriptions and shapes of dry sand, loam, or iron-moulded steel castings; sheets and plates and steel in all forms and shapes not specially provided for in this act. ° * * *

193. Articles or wares not specially provided for in this act, composed wholly or in part of iron, steel, * * * whether partly or wholly manufactured. * * *

It is claimed by the appellants in each case that these importations are "pressed, sheared, or stamped shapes" of steel or "steel in all forms and shapes" within the meaning of paragraph 135.

The Government contends that the merchandise is more aptly described by the language of paragraph 193 as "articles or wares not specially provided for in this act, composed wholly or in part of iron, steel, * * * and whether partly or wholly manufactured."

We think the appellants' contention can not be sustained.

No commercial designation is claimed or shown; therefore the language under consideration must be given its common and ordinary meaning. We do not think that the terms "pressed, sheared, or stamped shapes" or "steel in all forms and shapes" are so specific or apt a description of the merchandise here as are the words "articles or wares, composed of steel, whether wholly or partly manufactured."

A reading of paragraph 135 clearly indicates that pressed, sheared, or stamped shapes of steel and steel in all forms and shapes aptly applies to the plates, forms, and shapes of steel which are the crude material for subsequent manufacture, and not to the forms and shapes they assume, as in this case, which are the results of such manufacture.

It is clear from the evidence that the processes which the original flat shapes and forms of the steel plate have undergone to produce

the articles here are manufacturing processes; that as a result the articles before us have taken new, different, and distinctive shapes and forms that indicate clearly the purpose for which they are designed and for which only in their present form they can be used. They would not ordinarily be described by the words "pressed, sheared, or stamped shapes, or steel in all forms and shapes," but would more aptly be designated as "unfinished pitchers, handles, knobs, spouts, covers," or such other appropriate name as their shape, form, and intended use would readily suggest, which words of themselves imply the products of manufacturing processes. They have passed beyond the stage of pressed, sheared, or stamped shapes of steel, or forms and shapes of steel within the meaning of paragraph 135, and are articles or wares of steel partly or wholly manufactured.

The appellants place much reliance upon the fact that the processes to which these articles have been subjected are in the main shearing, stamping, and pressing processes, claiming in effect that whatever is so produced is a sheared, stamped, or pressed shape. But this is manifestly fallacious. The evidence shows that, aside from enameling them, entirely finished articles, such as a frying pan, etc., can be produced by the same processes. We think it could not be held that such finished articles were sheared, stamped, or pressed shapes; no more can it be said that the articles involved here which are finished and ready for the enameling process are such shapes. They are each ready in the condition as imported for the immediate use for the object for which it was intended, namely, the subjecting them to the enameling process and then the union with the other necessary parts of a finished article of enameled ware. United States *v*. Prosser (1 Ct. Cust. Appls., 22; T. D. 30848). Maldonado *v*. United States (176 Fed. Rep., 737).

It is urged in argument on behalf of appellants that if the classification of the collector be sustained it results that these articles are subject to a higher duty than the finished product would be, and paragraph 159 of the act of 1897 and decisions of the Board of General Appraisers thereunder are referred to as supporting the contention. It is argued that such a conclusion is inconsistent and that Congress can not be presumed to have intended that the various parts of an article of which enameled ware is made should pay a higher rate of duty than the completed article after it has been subjected to the enameling process.

This, however, can not affect the question. If the appellants' claim be sustained, it results that these nearly finished articles pay no more duty than the original flat sheets of steel of which they are made would pay, a result, as we view it, equally inconsistent.

The judgment of the Board of General Appraisers is *affirmed.*.