(C. D. 1881)

GLAZER STEEL CORPORATION *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 24, 1957)

*Eugene R. Pickrell* (*Richard F. Weeks* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: In this action, we are called upon to determine the proper dutiable status of certain steel in plate form, generally referred

to as "Universal Mill Flats," having, as imported, the following dimensions:

$$10\tfrac{3}{8}'' \times 0.187'' \times 183\tfrac{3}{8}''$$
$$10\tfrac{1}{4}'' \times 0.156'' \times 184\tfrac{5}{16}''$$
$$13\tfrac{11}{16}'' \times 0.250'' \times 235\tfrac{1}{4}''$$
$$11\tfrac{5}{8}'' \times 0.219'' \times 213\tfrac{3}{4}''$$

The collector of customs at the port of entry classified this merchandise as steel plates, not specially provided for, and assessed duty thereon at the rate of 12½ per centum ad valorem, pursuant to the provisions of paragraph 304 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T. D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T. D. 52462.

It is the claim of the plaintiff that said merchandise is plate steel, not thinner than 0.109 inch in thickness, which is dutiable at only 10 per centum ad valorem, by virtue of the provisions of paragraph 307 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802.

The pertinent tariff provisions, insofar as here applicable, read as follows:

Paragraph 304, as modified, *supra*:

Die blocks or blanks; shafting; pressed, sheared, or stamped shapes, not advanced in value or condition by any process or operation subsequent to the process of stamping; hammer molds or swaged steel; gun-barrel molds not in bars; concrete reinforcement bars; all descriptions and shapes of dry sand, loam, or iron molded steel castings; sheets and plates and steel not specially provided for; all the foregoing:

Valued above 5 and not above 8 cents per pound_____12½% ad val.

Paragraph 307, as modified, *supra*:

Boiler or other plate iron or steel, except crucible plate steel and saw plate steel, not thinner than one hundred and nine one-thousandths of one inch, cut or sheared to shape or otherwise, or unsheared, and skelp iron or steel sheared or rolled in grooves; all the foregoing regardless of value___10% ad val., but not less than 0.175¢ per lb.

The only witness to testify in the case was Jerome S. Glazer, vice president and treasurer of the plaintiff, who participated in the preparation of the specifications of, and placed the order for, the merchandise at bar. Although not yet 31 years of age at the time he gave his testimony, this witness stated that he had been in the steel business since early childhood, a period of approximately 15 years, during which time he had bought and sold steel products, including the type here involved. He had also observed the manufacturing processes by which it is produced, both in Europe and at two mills in the United States.

According to this witness, steel plates of the instant type, a sample of which is in evidence as plaintiff's exhibit 1, are produced in a continuous rolling mill, known as a universal mill, from ingots made from scrap iron and pig iron, in open hearth furnaces. The ingots are hot rolled between grooved rollers, which form a steel plate with two even, or slightly rounded edges, of a desired width and gauge, which is then cut or sheared into specified lengths.

The instant plates were made to definite specifications as to carbon content, quality, and strength for use ·"as a part in itself for the production of automobile frames, known as side parts." To that end, the material "is placed under a large press and it is formed when stamped by this press to fit as a part on an auto frame or truck frame." It is also used for farm implements, equipment manufacturing, such as buckets, heavy road equipment, and tractors.

This witness further testified that universal mill plates are distinguished from sheared plates, in that the latter are rolled with four rough or serrated edges, which must be sheared, whereas the former are rolled even as to the width edges and sheared only with respect to the length edges.

Upon this record, counsel for the plaintiff urges, in his brief, that the instant merchandise is excluded from the provisions of paragraph 304, as modified, *supra*, for the reason that that paragraph, as well as its predecessors as far back as the Tariff Act of 1897, as judicially construed, has been confined to plates of steel and other steel products which are crude and unfinished and serve as material for further fabrication into completed articles. Whereas, it is contended, paragraph 307, *supra*, refers to steel products which are *"finished* in the sense that they are ready for immediate use. The involved plates or frames, according to the uncontradicted evidence, constitute finished products as distinguished from material." [Italics quoted.]

It is, of course, by now well-settled law that paragraph 304 provides for steel products which are material for further manufacture and does not encompass completely manufactured articles. A long line of decisions approving the principle, perhaps first expressed in the case of *United States* v. *Buehne Steel Wool Co.*; *Buehne Steel Wool Co.* v. *United States*, 154 Fed. 93, holds to that effect. See, in this connection, *United States* v. *Newman Wire Company*, 13 Treas. Dec. 154, T. D. 27896; *Theo. W. Morris & Co.* v. *United States*, 15 Treas. Dec. 314, T. D. 28888, affirmed, 169 Fed. 666; *United States* v. *Prosser*, 1 Ct. Cust. Appls. 22, T. D. 30848; *Lunham & Moore* v. *United States*, 2 Ct. Cust. Appls. 1, T. D. 31569; *United States* v. *Frank*, 15 Ct. Cust. Appls. 97, T. D. 42184; *Braun-Steeple Co. et al.* v. *United States*, 18 C. C. P. A. (Customs) 437, T. D. 44683.

We are inclined to the view, however, that this principle does not, in itself, resolve the question in this case. It cannot be said of the

merchandise at bar that it is, as imported, a finished product, as distinct from material requiring further fabrication. To subserve its ultimate function as a part of an automobile frame, the steel plate must be formed by a press. It must be converted from a material into a completed shape before it may be said to be ready for its final use.

Pieces of steel, shaped by pressing into the exact forms required for use as automobile frames, dedicated to that use and suitable for no other, have themselves been held to fall within this so-called materials provision, to wit, paragraph 131 of the Tariff Act of 1909, for pressed, sheared, and stamped shapes, not advanced beyond hammering, rolling, or casting. *Kuyper & Co.* v. *United States*, 5 Ct. Cust. Appls. 175, T. D. 34253.

An analysis of the relatively few cases which have dealt with the competing provisions here in issue since they first appeared in the Tariff Act of 1897, and down through the years have continued to be a part of our tariff laws,[1] reveals that the distinction between "steel plates" and "plate steel" rests upon other considerations than the proposition of whether they are materials or finished products.

In the case of *Geo. W. McNear, Risdon Iron and Locomotive Works et al.* v. *United States*, 6 Treas. Dec. 673, T. D. 24602, steel plates, 12 to 24 inches wide, 14½ to 19⅝ feet long, and 1 inch in thickness, cut into their form and shape, as imported, for intended use in building construction, were held not to be either boiler or other plate iron or steel within the provisions of paragraph 126 of the 1897 act, as classified, or structural shapes of iron or steel within the provisions of paragraph 125 of said act, as claimed by the importer, but, in fact, forms or shapes of steel, provided for in paragraph 135 of said act. In rejecting as erroneous the collector's classification, the court stated:

The fact that the imported articles were cut from sheets or plates of steel takes them out of paragraph 126, for they are no longer sheets or plates, but forms or shapes, not structural in form, and answer the description set out in paragraph 135. What is meant by "sheared" in paragraph 126 is that process of finishing which results in trimming off the rough edges of sheets or plates after the process of rolling is completed, and does not include articles cut out of such sheets or plates. Such cutting up results in destroying the form and character of sheets and plates and makes a new class of article with new name, character, and use. In fact, these articles answer the specific description of "sheared or stamped plates," mentioned in paragraph 135.

The case of *R. D. Wood & Co.* v. *United States*, 8 Treas. Dec. 830, T. D. 25915, affirmed, *United States* v. *Wood*, 14 Treas. Dec. 558, T. D. 28655, *Hill* v. *Wood*, 163 Fed. 51, involved checkered steel

---

[1] Paragraph 304 of the Tariff Act of 1930 has been preceded by paragraph 304 of the Tariff Act of 1922, paragraph 110 of the Tariff Act of 1913, paragraph 131 of the Tariff Act of 1909, and paragraph 135 of the Tariff Act of 1897. Paragraph 307 of the Tariff Act of 1930 has been preceded by paragraph 307 of the Tariff Act of 1922, paragraph 105 of the Tariff Act of 1913, paragraph 122 of the Tariff Act of 1909, and paragraph 126 of the Tariff Act of 1897.

plates for use as flooring in boiler rooms, which were classified as boiler or other plate iron or steel in paragraph 126 of the 1897 act and claimed to be steel plates, as provided in paragraph 135, or structural steel within paragraph 125 of said act. The court held that plate steel, which it defined as "that class of plate which is used in the construction of boilers, tanks, or vessels, such as can be cut, bent, and shaped," did not include steel plate suitable only for use as floor plates and, hence, that steel floor plates were steel plates within the contemplation of said paragraph.

With respect to steel plates suitable only for use as flooring, whether sheared or produced by the universal mill process, the courts have consistently followed the rule adopted in *Hill* v. *Wood, supra. R. D. Wood & Co.* v. *United States,* 16 Treas. Dec. 382, T. D. 29405; *Amerlux Steel Corp.* v. *United States,* 18 C. C. P. A. (Customs) 449, T. D. 44700. Nevertheless, the definition of plate steel as steel susceptible of use in the production of boilers, tanks, or vessels, and capable of being cut, bent, or shaped to forms appropriate for such use, has not been repudiated.

In the case of *E. L. Soule & Co.* v. *United States,* 16 Ct. Cust. Appls. 524, T. D. 43240, universal mill plates of steel, ¾ inch thick, about 40 feet long, and varying in width from 8 inches to 18 inches, made to definite specifications of carbon content, strength, and quality, for use in the making of steel frames in buildings, were held to be aptly covered by the provision of paragraph 304 of the Tariff Act of 1922 as plates of steel, not specially provided for, rather than to be provided for in paragraph 312 of said act as building forms, structural shapes, or parts or sections of columns or posts. In posing the issue before it, our appellate court stated:

In this court the sole question that is presented is as to whether or not the universal mill plates are described and classifiable under paragraph 312; if not, they are unquestionably dutiable under paragraph 304.

It is at once apparent that the court's conclusion that paragraph 304, *supra,* provided for the steel plates before it was reached without regard to any consideration of the provisions of paragraph 307, which was not invoked by either party. Neither do we apprehend that had the court looked into the language of said paragraph 307, it would have found there reason to arrive at any other conclusion.

It is our view that steel sheeting used for flooring, or otherwise in building construction as material for columns, beams, or posts, for which purposes bending and shaping into specific forms are not prerequisites, is the kind of article provided for in paragraph 304, *supra,* as steel sheets or plates, and we believe the foregoing cases support this position. But sheets of steel, prepared in accordance with definite specifications for use in the manufacture of boilers, tanks, vessels, automobiles, trucks, tractors, and other similar equip-

ment, implements, or vehicles, capable of being bent or pressed into shapes forming parts of such articles, are the class of materials to which the provision for boiler or other plate iron or steel in said paragraph 307 addresses itself. Both the manner of manipulation and the ultimate use are, in our opinion, the criteria which determine whether steel in plate form responds to the term "steel plates" or "plate steel."

As applied to the merchandise at bar, it is made abundantly clear into which category it falls. The uncontradicted evidence of the witness for the plaintiff establishes that the material which it imported was produced to definite specifications as to carbon content, quality, and strength, for ultimate use as frames for automobiles, trucks, farm equipment, tractors, and the like. Before becoming firmly adapted to any one of such uses, it must be placed in a press and formed into a desired shape. It is plate steel, as provided for in said paragraph 307, and not the steel plates of paragraph 304, and we so hold. The merchandise at bar, being greater than 0.109 inch in thickness, is, therefore, dutiable, as claimed, at the rate of 10 per centum ad valorem, as provided in said paragraph 307, as modified, *supra*. The claim in the protests to that effect is sustained.

Judgment will be entered accordingly.