(C. D. 2049)

BORDER BROKERAGE COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 1, 1958)

*Lawrence & Tuttle; Barnes, Richardson & Calburn* (*Hadley S. King* and *Eugene L. Girden* of counsel) associate counsel; for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon* and *Henry J. O'Neill*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

FORD, Judge: The controversy in the cases at bar, which have been consolidated for the purpose of trial, involves the proper classification of certain merchandise composed of extruded lead with notches at one-half-inch intervals, which was imported on reels in lengths of approximately 100 feet. The collector of customs classified

this merchandise as "articles wholly or in chief value of lead" under the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, or the Protocol of Accession by Japan to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T. D. 53865, and T. D. 53877, and assessed duty thereon at the rate of 15 per centum ad valorem for merchandise entered prior to September 10, 1955, and at the rate of 11¼ per centum ad valorem for merchandise entered on and after said date.

Plaintiff contends that the merchandise is properly dutiable under paragraph 392 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, at 1⅚ cents per pound as lead wire.

The pertinent provisions of the involved statutes are as follows:

Paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802:

Articles or wares not specially provided for, whether partly or wholly manufactured:

*  *  *  *  *  *  *

Articles wholly or in chief value of lead_____ 2¢ per lb., but not less than 15% nor more than 45% ad val.

Paragraph 397 of the Tariff Act of 1930, as modified by the Protocol of Accession by Japan to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T. D. 53865, and T. D. 53877:

Articles or wares not specially provided for, composed wholly or in chief value of lead, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured. 1½¢ per lb., but not less than 11¼% nor more than 22½% ad val.

Paragraph 392 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739:

Lead in sheets, pipe, shot, glazier's lead, and lead wire_____ 1⁵⁄₁₆¢ per lb.

The record in this case consists of an oral stipulation entered into by and between counsel for the respective parties and two exhibits. Although the stipulation was in narrative form, both parties appear to have agreed that the facts stipulated are as follows:

(a) That the merchandise is imported on reels in comparatively long lengths of approximately 100 feet.

(b) That the merchandise is made by extruding lead.

(c) That the notches, which appear at approximately one-half-inch intervals, are put into the material immediately after the extrusion operation.

(d)   That after importation this merchandise is used as a core in making an article which is used as a weight or a lead line in fishing material.

(e)   That the reason for putting the notches into the extruded lead is so that after insertion as a core for a weight for fishing nets, the lead can be physically broken at the points of the notches.

(f)   That, as used in fishing nets, the extruded lead is actually broken after insertion, at the points of the notches, so that instead of being one continuous piece, there remain little sections of lead which hold the net down at the bottom.

Counsel for plaintiff argues the legal theories that paragraph 392 of the Tariff Act of 1930, *supra*, is not a use provision and, therefore, is not controlled by the destined use of the article, unless it is bought and sold under a name or has the necessary qualities or characteristics of such an article, citing *Swedish Iron & Steel Corporation* v. *United States*, 28 Treas. Dec. 101, T. D. 35100, and *In re Hermann Boker & Co.*, G. A. 6694, 14 Treas. Dec. 501, T. D. 28625.

Brief for plaintiff also quotes definitions of the terms "lead" and "wire" and concludes that the merchandise in question "after extrusion and before notching, has the necessary qualities and characteristics of lead wire." Plaintiff further claims that the notching of the wire at one-half-inch intervals after extrusion does not cause any loss of identity of the merchandise as lead wire, and that an unlimited *eo nomine* designation includes all forms of the article, citing *Nootka Packing Co. et al.* v. *United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464.

We are in accord with the general principle of law, which is well established and widely used in customs jurisprudence, that an *eo nomine* designation without terms of qualification or limitation embraces the named product in all forms and conditions. However, the principle of law is not to be used indiscriminately or without limitation. Where an article has been so far advanced as to have been transformed into a new article or dedicated to a particular use, this principle of law is inapplicable. The parties, in the instant case, have agreed that the notches were specifically placed in the extruded lead at one-half-inch intervals so that it may be broken apart after it is inserted in the fishing nets. Based upon the stipulated facts and the cases cited, *infra*, we are of the opinion that the principle of inclusiveness of an *eo nomine* designation, relied upon by plaintiff, is not applicable in the instant case.

Assuming *arguendo* that the merchandise involved herein at the time of extrusion is lead wire, the issue is then whether the notching takes the merchandise out of such a classification.

In the case of *Braun-Steeple Co. et al.* v. *United States*, 18 C. C. P. A. (Customs) 437, T. D. 44683, sheets of steel in which perforations had been stamped, forming various fancy designs, for use in radiator covers, panels, lanterns, etc., after importation, were held dutiable under paragraph 399 of the Tariff Act of 1922, and not as "stamped

shapes," or sheets, plates, or steel, not specially provided for, under paragraph 304 of the Tariff Act of 1922. In arriving at this decision, the appellate court followed the principle of law enunciated in the case of *Lunham & Moore* v. *United States*, 2 Ct. Cust. Appls. 1, T. D. 31569, and held as follows:

> The involved articles consist of sheets of steel which have been further processed and advanced in condition for particular commercial uses. They are not mere sheets, plates, or steel, not specially provided for, nor are they stamped shapes. On the contrary, they are steel sheets in which, by a stamping or punching process, various fancy designs have been formed. They are, therefore, articles wholly or partly manufactured, and dutiable under paragraph 399. *Lunham & Moore* v. *United States, supra.*

Similarly, in the case at bar, assuming that the imported merchandise was lead wire before the notching process, and we reach no conclusion here to that effect, it is clear that such a process constitutes an advancement in condition, which dedicated it to a particular use. Such advancement and dedication to a particular commercial use changes the character of the original material and brings it within the purview of paragraph 397 of the Tariff Act of 1930, as modified, *supra.*

In *United States* v. *Globe Shipping Co., Inc.*, 31 C. C. P. A. (Customs) 95, C. A. D. 254, the appellate court, in affirming a decision of this court covering certain steel sheets, lacquered on one side, held such an article not to be within the purview of paragraph 397 of the Tariff Act of 1930. The appellate court, however, pertinently indicated the necessary requirements to bring an article within the purview of paragraph 397, *supra*, as follows:

> * * * We think, however, that this is a case in which the sample in evidence is a potent witness, and it appears clear to us that various types of articles can be stamped or manufactured from the sheets. Upon the record, taken as a whole, we think it should be held that the sheets in their condition as imported had not been so advanced in manufacture that they had become dedicated to any single use, or class of uses, which is one of the tests applied in determining whether an article contemplated by paragraph 397, *supra*, is "partly or wholly manufactured."

Paragraph 392 is an *eo nomine* provision and is not in most instances controlled by the end use of the article. An inquiry into the use of the imported merchandise is necessary in the instant case for the court to determine whether the merchandise is taken out of the provision of paragraph 392, *supra*, for lead wire. The parties in the instant case agree that notches are made in the extruded lead so that, after the insertion in fishing nets, they may be broken apart and used as a weight for said nets. Accordingly, the ultimate use of the involved merchandise is an important factor in determining its proper classification.

Based upon the record and the authorities cited herein, we hold the merchandise to be properly dutiable under paragraph 397 of the Tariff Act of 1930, as modified, *supra*.

The protests are overruled and judgment will be entered accordingly.