**R. W. SMITH, a/c Goodson Steel Corp.,
Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**C.D. 3452; Protest No. 64/1480–7865.**

United States Customs Court
Second Division.
May 20, 1968.

Stein & Shostak, Los Angeles, Cal. (Marjorie M. Shostak and S. Richard Shostak Los Angeles, Cal., of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Sheila N. Ziff and Andrew P. Vance, New York City, trial attorneys), for defendant.

Before RAO and FORD, Judges.

RAO, Chief Judge:

The merchandise involved in this protest is described in the invoice as "Small Diamond Mesh Metal Lath Black Asphalt Painted". It was classified as articles of steel, not specially provided for, whether partly or wholly manufactured, in paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and duty at the rate of 19 per centum ad valorem was imposed.

The principal claim of plaintiff is that this merchandise is properly dutiable under paragraph 308 of the same act, as modified by Presidential Proclamation No. 3468, 97 Treas. Dec. 157, T.D. 55615, or by Presidential Proclamation No. 3513, 98 Treas. Dec. 51, T.D. 55816, at the rate of 9 per centum ad valorem, as sheets of steel, other than corrugated or crimped, valued over 3 cents per pound.

The plaintiff alternatively claims that the merchandise is properly dutiable pursuant to paragraph 304 of the same act, as modified by the foregoing Presidential proclamations, at the rate of 10 per centum ad valorem, as sheets or plates or steel, not specially provided for, valued over 5 but not over 8 cents per pound.

The plaintiff has abandoned all other claims in his protest.

By stipulation of the parties, it has been agreed that the value of the merchandise at bar is over 3 cents per pound.

The pertinent text of the statutes above referred to is here set forth:

Paragraph 397 of the Tariff Act of 1930, as modified by the sixth protocol, supra:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* \* \* \*

Not wholly or in chief value of tin or tin plate:

Carriages, drays, \* \* \*

\* \* \* \* \* \*

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum \* \* \* .............. 19% ad val.

Paragraph 308 of the Tariff Act of 1930, as modified by the Presidential proclamations, supra:

Sheets of iron or steel, common or black, of whatever dimensions, and skelp iron or steel; all the foregoing (not including corrugated or crimped) valued over 3 cents per pound ....... 9% ad val.

Paragraph 304 of the Tariff Act of 1930, as modified by said Presidential proclamations—

Sheets and plates and steel not specially provided for (except circular saw plates):

\* \* \* \* \* \*

Valued over 5 but not over 8 cents per pound .................... 10% ad val.

The following plaintiff's exhibits were received in evidence:

Exhibit 1—A representative sample of the imported merchandise, except for size.

Exhibit 2—A photograph illustrating the type of machine which manufactures expanded metal, showing the undulating edge of the guillotine-type machine in an up position and part of the expanded metal coming out of the machine.

Exhibit 3—A photograph illustrating the undulating edge of the machine in a down position, showing expanded metal emerging therefrom.

Exhibit 4—A photograph showing the plaintiff's witness in front of the same machine holding a sheet of metal.

Exhibit 5—An eight page colored brochure showing various uses of expanded metal which plaintiff's witness had personally observed.

Exhibit 5—A—Page 2 of the above mentioned brochure, illustrating a machine which makes expanded metal.

Exhibit 6—A piece of corrugated steel sheet.

Offered by the defendant and received in evidence by the court without being marked were the papers in the court file.

The sole witness in this case was Albert A. Goodson, Jr., president of Goodson Steel Corp., which company imports and manufactures steel products for the construction trade and sells them throughout the United States. Goodson has owned this business since 1955, and prior thereto was employed as a sales engineer for Penn Metal Company for 6 years, and for 3 years before that he had been employed by a dealer in steel building products of various kinds.

Goodson testified that he is familiar with the merchandise at bar. He has been importing and selling it for a period of 8 years and has seen it manufactured in factories in the United States and at six different factories in Japan, where it is manufactured in the same manner as it is in this country. Said process of manufacture is essentially a guillotine-type method in which the machine used operates in an up and down motion and slits and presses a sheet of steel. At the time the pressing action takes place, the sheet is expanded due to the action

of the undulating type edge on the blade of the shears. The steel sheet being processed measures approximately 8 inches in width by 96 inches in length at the beginning of the process, and it emerges as a piece of metal lath with dimensions approximately 27 inches in width by 96 inches in length. The length and thickness of the product remain the same, and none of the basic steel sheet is cut away or lost in the process. After the sheets are expanded, they are treated with a coating of black asphalt to prevent rust. The resultant article is known as metal lath.

Goodson testified as follows as to the uses made of the merchandise in issue:

> * * * Specifically, in construction, where it is used as a plaster base; in the oil field, where it is used as grading in lieu of conventional grading; in the oil field where it is used as guards around machinery; at the State Fair Grounds, in the State of Texas, where it is used for recreation rides to encase the cages for the children who ride on these; a few adults, too, and for use in shelving, grilles and guards for refrigerators, air conditioners, cotton gin equipment, partitions, open partitions. This is material that it called the material of a thousand uses.

It was explained further that the expanded metal sheets used as grading in oil fields, for waste paper baskets, catwalks, and so forth, would be of a heavier type than the merchandise at bar, which latter is mainly used as a plaster base in the construction industry.

Plaintiff's witness stated that, as a result of his experience in dealing in steel products, he was familiar with corrugated or crimped steel sheets, having dealt with such material for a period of 5 years, and he had seen them made in the United States. A steel sheet is corrugated by placing it on a large drum which has a corrugator conforming to the desired pattern. The corrugator is then revolved and meshes with a corresponding drum below it. Corrugations are formed one at a time in this process. In corrugating a sheet of steel, nothing is added nor is anything taken away. Corrugating a sheet of steel merely reduces its width but does not affect its length or weight.

Goodson testified that a steel sheet is defined as a piece of steel which is relatively wide and long in relation to its thickness and that, in his opinion, he considers the merchandise in issue to be sheets of steel.

The question for determination is whether the imported merchandise is dutiable pursuant to the provision for articles of steel, partly or wholly manufactured, in paragraph 397 of the Tariff Act of 1930, as modified, supra, as classified by the customs authorities, or as steel sheets, other than corrugated or crimped, valued over 3 cents per pound, in paragraph 308 of said act, as modified, or as sheets and steel, not specially provided for, of the kind covered by paragraph 304 of said tariff act, as modified.

As to what constitutes a "manufacture" has been ruled upon by our appellate tribunal in the case of H. Muehlstein & Co., Inc., F. L. Kraemer & Co. v. United States, 44 CCPA 107, C.A.D. 645, wherein it was stated—

> The question as to what constitutes a manufacture is one which has frequently been before the courts. In Kleinberger & Katz v. United States, 12 Ct.Cust.Appls. 571, T.D. 40798, the matter was thoroughly discussed with an extensive citation of authorities, and the following excerpt from Ishimitsu v. United States, 11 Ct.Cust. Appls. 186, T.D. 38963, was adopted as a proper definition:
>
> > * * * There still remains the idea that to constitute a manufacture of a thing, or a thing manufactured, it must appear that something has been produced so changed or advanced in condition from what it was before being subjected to the processing or treatment that whether of only one material or of

more than one, it has attained a distinctive name, character or use, different from that originally possessed by the material or materials before being subjected to the manufacturing process.

As applied to the facts in the instant case, it appears from the record before the court that the basic steel in sheets, after being subjected to the slitting, pressing, and expanding operations above described, are "so changed or advanced in condition" that they have "attained a distinctive name, character or use, different from that originally possessed by the material * * * before being subjected to the manufacturing process." From the original solid-faced sheet of steel measuring 8 inches in width by 96 inches in length, there is produced a steel mesh article measuring 27 inches in width by 96 inches in length, the entire face of which consists of apertures roughly diamond shaped in configuration measuring approximately ½ inch in length and $\frac{5}{16}$th of an inch in width, which bears the distinctive name of "metal lath", the physical character of which is different from the material of which it is made, and the main use of which, according to plaintiff's witness, is as a plaster base in the construction field.

The following definitions from Webster's New International Dictionary of the English Language, Second Edition, 1957, appear to describe the imported merchandise with particular aptness:

lath. 1. *Building*. a. * * * b. Expanded or otherwise perforated metal in sheets, stiffened wire cloth, or the like, used as a substitute for wooden laths in plastering. See EXPANDED METAL * * *.

expanded metal. Sheet metal cut and stretched into a lattice. [Illustrations are given of two forms of expanded metal for plaster work.]

In support of his claim for classification of the merchandise within the purview of paragraph 308 of the Tariff Act of 1930, as modified, supra, plaintiff seeks to draw an analogy between steel sheets which have been corrugated or crimped and those which have been subjected to the processes which resulted in the instant articles. Although there is nothing on the record before us explanatory of the crimping process, plaintiff's witness, Goodson, was called upon to describe how steel sheets are corrugated. It is apparent from said testimony that upon completion of the corrugating process the end product retains its identity as a corrugated steel sheet. In the case of the merchandise at bar, however, after the basic steel sheet has been subjected to the manufacturing process resulting in the imported merchandise, the end product "has attained a distinctive name, character or use, different from that originally possessed by the material * * * before being subjected to the manufacturing process"—namely, metal lath, for use as a plaster base in the construction industry.

We are of the opinion, therefore, that the merchandise at bar does not fall within the provisions in paragraph 308, supra, for steel sheets, other than corrugated or crimped, which plaintiff designates in his brief as the principal claim.

With respect to the claim for classification of the merchandise in issue within the provisions of paragraph 304, set forth above, plaintiff relies principally on the cases of United States v. Globe Shipping Co., Inc., 31 CCPA 95, C.A.D. 254, and Amerlux Steel Corp. v. United States, 18 CCPA 449, T.D. 44700, and seeks to distinguish the case of Braun-Steeple Co. et al. v. United States, 18 CCPA 437, T.D. 44683.

In the *Globe* case, supra, the Court of Customs and Patent Appeals affirmed the trial court in holding that steel sheets lacquered on one side with a single color, which merchandise was sold as steel sheets, came within the provisions of paragraph 304 of the Tariff Act of 1930 for "sheets and plates and steel

not specially provided for", as claimed, rather than as articles not specially provided for, composed of steel, whether partly or wholly manufactured, pursuant to paragraph 397 of said tariff act, as classified. In the course of its decision the court stated: "We do not regard the process of applying the lacquer as being of any particular importance upon the issue here involved. Whatever it may have been, the resulting product was a steel sheet coated on one side. * * "

The *Amerlux* case, supra, involved checkered, or raised diamond, steel floor plates, which had been classified by the customs authorities as steel plates, not specially provided for, within the purview of paragraph 304 of the Tariff Act of 1922, and were claimed to be building forms, or structural shapes, in paragraph 312 of said act. The plates there involved were chiefly used as floors in buildings, boiler rooms, and engine rooms, and were sometimes used in the construction of platforms and steps for fire escapes. In sustaining the classification of the merchandise as steel plates, the court followed a previous decision on similar material, reported in Hill v. R. D. Wood & Co., 3 Cir., 163 F. 51, and the doctrine of legislative sanction of judicial interpretation was deemed to apply.

It is the view of the court in the instant case that both the *Globe* and the *Amerlux* cases, supra, are distinguishable from the case at bar in that the merchandise there involved retained its character and use as steel sheets and steel plates, respectively, whereas, in the case at bar the merchandise has been manufactured from steel sheets into metal lath.

The *Braun* case, cited above, is deemed to be in point. The merchandise involved in that case consisted of sheets of steel, 6 feet in length and 3 feet in width, in which perforations had been stamped, forming various designs. According to the witness who testified in that case, the merchandise was produced—

* * * by introducing sheets of steel into a stamping or punching machine "in which there is a gang punch or die that pierces or stamps in the design made into about 12 inches square; then the piece is automatically placed in another machine until the entire piece is so punched with the exception of the border which is left"; that, with the exception of a border or margin on the sides and ends, varying from one-half to 1 inch in width, the stamped designs appear throughout the sheets; that, after importation, the involved merchandise is cut to shape and form for use in radiator covers, panels in the ends of metal beds, lanterns, lighting fixtures, fire screens, and possibly other articles.

Said merchandise was classified as articles or wares, not specially provided for, composed of steel, partly or wholly manufactured, in paragraph 399 of the Tariff Act of 1922 [predecessor to paragraph 397 of the 1930 Tariff Act]. Plaintiff sought a reclassification of the merchandise, either as stamped shapes or as sheets, plates, or steel, not specially provided for, in paragraph 304 of said tariff act, which provided a lower rate of customs duty. In sustaining the original classification, the appellate court stated—

The involved articles consist of sheets of steel which have been further processed and advanced in condition for particular commercial uses. They are not mere sheets, plates, or steel, not specially provided for, nor are they stamped shapes. On the contrary, they are steel sheets in which, by a stamping or punching process, various fancy designs have been formed. They are therefore, articles wholly or partly manufactured, and dutiable under paragraph 399. Lunham & Moore v. United States [2 Ct.Cust. Appls. 1, T.D. 31569].

The *Braun* case, supra, was considered and applied in the case of Border Brokerage Company v. United States, 41 Cust.

Ct. 264, C.D. 2049, wherein lead wire, which had been notched at one-half inch intervals so that it might be broken apart for use as weights for fishing nets, was held to be articles not specially provided for, partly or wholly manufactured, wholly or in chief value of lead, in paragraph 397 of the Tariff Act of 1930, as modified, rather than as lead wire in paragraph 392 of said tariff act, as modified.

■ In the light of the foregoing considerations and predicated on the record before the court in the instant case, we are of the opinion that, as in the *Braun* case, supra, so, too, here, the articles in controversy "consist of sheets of steel which have been further processed and advanced in condition for particular commercial uses" and that they are not such "sheets and plates and steel not specially provided for" as are covered in paragraph 304 of the Tariff Act of 1930 as modified. Accordingly, plaintiff's alternative claim for such classification must be overruled. All other claims of plaintiff, having been abandoned, are dismissed.

Judgment will issue in accordance with the facts above expressed.

FORD, J., concurs.