(C.D. 3845)

Burn Strauss, Inc. *v.* United States

United States Customs Court, Second Division

(Decided June 9, 1969)

*Stein & Shostak* (*S. Richard Shostak* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov* and *Velta A. Melnbrencis*, trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

NEWMAN, Judge: This case presents for our determination the proper tariff classification of certain steel articles described on the invoice as "Black Steel in Coils (Hemmed, Painted and Corrugated) 15″ coil." The merchandise was assessed with duty at the rate of 19 per centum ad valorem under item 657.20 of the Tariff Schedules of the United States (TSUS) as "other" articles of iron or steel, not coated or plated with precious metal.

Plaintiff's primary contention, as reflected by the claims made in its original protest under items 608.81, 608.82 and 609.12, is that the merchandise has not been advanced to the status of *articles* of steel, not specially provided for; but rather, that the merchandise retained its identity as *sheets* of steel. At the trial, plaintiff abandoned its claim under item 609.12, and amended its protest to alternatively claim under the provision for sheets of steel in item 608.84 and the provision for steel angles, shapes, and sections in item 609.84.

In its brief, plaintiff has abandoned its claim under item 608.84, added at the trial, and has requested to again be permitted to amend its protest. Now, after the trial, plaintiff seeks for the first time to add two additional alternative claims under the provisions for sheets of steel in items 608.87 and 609.13 "[i]n order to conform to the proof adduced herein * * *." In its brief, defendant has opposed further amendment of the protest.

Prior to our discussion of the merits of this case, we shall briefly discuss the procedural problem raised by plaintiff's new request—in its brief—that it be permitted to amend its protest. We recognize, of course, that permitting the amendment of protests is discretionary, and that the court has been liberal in permitting plaintiffs to amend. However, in this case, we must emphasize that plaintiff has not filed a motion to set aside the submission and reopen the case for the purpose of amendment, nor has any motion to amend been duly filed with the court. Plaintiff's proposed new claims are mentioned only in its brief. Under the circumstances herein, clearly, it would be entirely inappropriate for us to rule on plaintiff's new claims which were not raised in the pleadings, or any specific reference made

thereto during the course of the trial. This is not a case for the exercising of discretion for permitting amendments at this late stage of the proceeding. *United States* v. *E.H. Bailey & Co.*, 32 CCPA 89, C.A.D. 291 (1944). Cf. *J.W. Hampton, Jr., & Co., Inc.* v. *United States*, 37 Cust. Ct. 425, Abstract 60376 (1956); *Border Brokerage Co.* v. *United States*, 52 Cust. Ct. 275, Abstract 68333 (1964). Consequently, we deny plaintiff's request for such amendments.

Parenthetically, we point out that in view of the conclusions we have reached on the merits, the granting of plaintiff's request (in its brief) would have been moot, in any event.

Plaintiff having abandoned its claims under items 609.12 and 608.84, we consider plaintiff's remaining claims that the merchandise is properly dutiable at the rate of 10 per centum ad valorem under item 608.81, or 8 per centum ad valorem under item 608.82, or 75 per centum ad valorem under item 609.84, TSUS.

Quoted below are the pertinent statutory provisions:

Classified under:

Schedule 6, Part 3, Subpart G, Tariff Schedules of the United States:

| | |
|---|---|
| Articles of iron or steel, not coated or plated with precious metal:<br>    Cast-iron articles, not alloyed: | |
|      *   *   *   *   *   *   * | |
|     Other articles: | |
|      *   *   *   *   *   *   * | |
| 657.20         Other _____ | 19% ad val. |

Claimed under:

Schedule 6, Part 2, Subpart B, Tariff Schedules of the United States:

| | |
|---|---|
| Plates and sheets of iron or steel, not cut, not pressed, and not stamped to nonrectangular shape * * *:<br>    Not coated or plated with metal and not clad:<br>        Black plate: | |
| 608.81            Corrugated or crimped_____ | 10% ad val. |
| 608.82            Other _____ | 8% ad val. |
| Angles, shapes, and sections, all the foregoing of iron or steel, hot rolled, forged, extruded, or drawn, or cold formed or cold finished, whether or not drilled, punched, or otherwise advanced; sheet piling of iron or steel:<br>    Angles, shapes, and sections:<br>        Hot rolled; or, cold formed and weighing over 0.29 pound per linear foot: | |
|        *   *   *   *   *   *   * | |

Drilled, punched, or otherwise
advanced:

609.84          Other than alloy iron or
steel _____    7.5% ad val.

Other provisions:

Tariff Schedules of the United States

### Schedule 6. - METALS AND METAL PRODUCTS

\*      \*      \*      \*      \*      \*      \*

PART 2. - METALS, THEIR ALLOYS, AND THEIR BASIC SHAPES AND
FORMS

Part 2 headnotes:

1. This part covers precious metals and base metals (including such metals when they are chemically pure), their alloys, and their so-called basic shapes and forms, and, in addition, covers metal waste and scrap. Unless the context requires otherwise, the provisions of this part apply to the products described by whatever process made (i.e., whether rolled, forged, drawn, extruded, cast or sintered) and whether or not such products have been subjected to treatments to improve the properties or appearance of the metals or to protect them against rusting, corrosion or other deterioration. These treatments include annealing, tempering, case-hardening and similar heat-treatments or nitriding; descaling, pickling, scraping, scalping and other processes to remove oxidation scale and crust; rough coating with oil, tar, grease, red lead, or other material to prevent rusting; polishing, burnishing, glazing, artificial oxidation, phosphatizing, and other finishing treatments; metallization by cementation, by electroplating, by immersion in a bath of molten metal, or by other means; coating with enamel, paint, lacquer, or other non-metallic substances; and cladding. \* \* \*

\*      \*      \*      \*      \*      \*      \*

### Subpart B. - Iron or Steel

Subpart B headnotes:

1. This subpart covers iron and steel, their alloys, their so-called basic shapes and forms, and in addition covers iron or steel waste and scrap.

\*      \*      \*      \*      \*      \*      \*

3. Forms and Condition of Iron or Steel.—For the purposes of this subpart, the following terms have the meanings hereby assigned to them:

\*      \*      \*      \*      \*      \*      \*

(g) Plates and sheets: \* \* \* Sheets are flat rolled products, whether or not corrugated or crimped, in coils or cut to length, under 0.1875 inch in thickness and over 12 inches in width. For the purposes of this subpart—

(i) the term "black plate" refers to cold rolled steel sheets, not coated, under 0.0142 inch in thickness;

\*      \*      \*      \*      \*      \*      \*

(j) <u>Angles, shapes, and sections</u>: Products which do not conform completely to the respective specifications set forth herein for blooms, billets, slabs, sheet bars, bars, wire rods, plates, sheets, strip, wire, rails, joint bars, or tie plates, and do not include any tubular products.

The pertinent facts may be briefly summarized as follows:

It appears that the basic material used in the manufacture of the imported merchandise was cold rolled sheet steel. Coiled sheets were run through a hemmer and corrugating machine and were cut off to the desired length (either 18 or 24 feet). Near the short ends of the sheets, seven holes were punched and dimpled. The articles were then painted a bright blue color.

The merchandise (represented by exhibit 1) was imported in the form of coils, and was ready for use in its imported condition as a wall to support a plastic liner or insert (which holds water) in a wading pool. The corrugations across its width give the article vertical rigidity, and the one-fourth inch hemmed edges along its length serve to lend horizontal or lateral stability, and provide a noncutting edge. Significantly, too, the dimpled holes at each end of the article permit the ends to be joined to form the wall for a wading pool.

Plaintiff's witnesses mentioned uses, other than wading pools, for which the merchandise is suitable, viz: fences, patio covers, retaining walls, and placing around water holes and trees. However there is no evidence that any significant quantity of the merchandise was ever used for those purposes, or that the merchandise was used as a material for manufacture into other articles. We have no hesitation in finding that the merchandise was dedicated for use in wading pools.

Plaintiff's position is that the imported merchandise constitutes steel sheets which have not been advanced by processing beyond their basic form, and are not dedicated to any specific use. If, however, the merchandise is not classifiable as "sheets," plaintiff alternatively claims that it falls within the definition of "Angles, shapes, and sections" in headnote 3(j) of subpart B, part 2, schedule 6.

Defendant contends that the merchandise is not within the purview of any of plaintiff's claims, since it is not a "basic shape and form" of metal, but is a finished article.

Initially, we shall discuss plaintiff's primary claim that the imported merchandise consists of steel sheets.

In our opinion, the provisions in subpart B, part 2, schedule 6 for sheets of iron or steel were intended to cover material for manufacturing articles, as distinct from finished articles of manufacture ready for use. This conclusion is fully supported by the cases.

In *United States* v. *Frank*, 15 Ct. Cust. Appls. 97, T.D. 42184 (1927), the appellate court had occasion to construe paragraph 304 of

the Tariff Act of 1922, which, among other basic shapes and forms of steel (i.e., ingots, blooms, slabs, etc.), covered sheets and plates. After reviewing several prior decisions which discussed the scope of various provisions covering certain basic shapes and forms of steel, the court concluded that paragraph 304 "was intended to refer to materials for further manufacturing processes and not to completely manufactured products like the steel piling involved here."

Similarly, in *Stengel* v. *United States*, 2 Ct. Cust. Appls. 137, T.D. 31663 (1911), the court of appeals held that zinc in the form and shape of, and ready for use in its imported condition as, tiles or tiling for walls and ceilings, was classifiable under the provision in the Tariff Act of 1909 for articles of zinc rather than under the provision for zinc in sheets. The latter provision was held to cover "sheets of zinc which retained their form and identity as such and were intended to be used as material for manufacturing articles as distinct from articles of manufacture ready for use." There, the court emphasized (page 139) that "[t]he articles here in question * * * are articles upon which no further work is necessary to be done to fit them for a specific definite use."

Additionally, it has been held that where steel sheets have been advanced in condition for particular commercial uses, they are not classifiable as steel sheets, but as articles of steel not specially provided for. *Braun-Steeple Co. et al.* v. *United States*, 18 CCPA 437, T.D. 44683 (1931) (steel sheets stamped with fancy designs for use in radiator covers, panels in the ends of metal beds, lanterns, etc.) ; *R. W. Smith, a/c Goodson Steel Corp.* v. *United States*, 60 Cust. Ct. 535, C.D. 3452, 284 F. Supp. 777 (1968) (metal lath processed from steel sheets by slitting, pressing and expanding operations, used mainly in the construction industry as a plaster base). Accord: *Border Brokerage Company* v. *United States*, 41 Cust. Ct. 264, C.D. 2049 (1958) (extruded lead imported on reels in lengths of approximately 100 feet, the lead being notched at intervals of one-half inch so it might be broken apart after insertion in fishing nets as weights, held dutiable as articles of lead not specially provided for, rather than as lead wire, since the merchandise was advanced or dedicated to a particular commercial use).

Although the above cited authorities construe the provisions of earlier tariff acts, we nevertheless are of the opinion that the rationale thereof is pertinent to the present case. Hence, the issue must be resolved on the basis of whether the imported merchandise consists merely of a material for subsequent manufacturing processes, or whether such merchandise has been so advanced or dedicated to its ultimate use that it is no longer classifiable as a steel sheet.

We have concluded from the record that the merchandise is not a mere material to be further processed, but is a finished product—a wall for a wading pool. The sample in evidence (exhibit 1) has been hemmed

along its edges for horizontal stability and as a precaution against accidental cutting by the ultimate user, and also has dimpled holes along both ends so that they may be joined. Apparently, nothing further needs to be done to the imported merchandise except to assemble it, together with the plastic liner, into a wading pool. As in *Braun*, the merchandise involved herein "consist[s] of sheets of steel which have been further processed and advanced in condition for particular commercial uses"; and as in *Stengel*, "[t]he articles here in question * * * are articles upon which no further work is necessary to be done to fit them for a specific definite use."

Plaintiff argues that "[e]very process of manufacture which the merchandise at bar has undergone is permitted by the provisions of the Tariff Schedules for sheets of steel," citing the definition of "sheets" in headnote 3(g) of subpart B, part 2, schedule 6, *supra*. For example, it is suggested that the term "hemmed" is equivalent to "crimped." However, defendant contends—and we agree—that while the meaning of the terms "corrugating" and "crimping" may be similar, such terms do not cover "hemming," as shown by the following lexicographic definitions:

*American Society for Metals, Metals Handbook*
Vol. 1, Definitions Relating to Metals and Metalworking (8th Edition 1961) pp. 1–41:

corrugating. Forming sheet metal into a series of straight parallel alternate ridges and grooves by using a rolling mill equipped with matched roller dies or by using a press brake equipped with special-shaped punch and die.

crimping. Forming relatively small corrugations in order to: (1) set down and lock in a seam, (2) create an arc in a strip of metal, and (3) reduce an existing arc or diameter.

hemming. Forming of an edge by bending the metal back on itself.

and

*Webster's Third New International Dictionary* (1963):
crimp 1 g: to roll or curl the edge of (as a steel panel) h: corrugate * * *

hem 1 b: an edge usu. folded back and fastened down on articles of sheet metal, plastic, rubber, leather

Plaintiff cites *United States* v. *Globe Shipping Co., Inc.* 31 CCPA 95, C.A.D. 254 (1943), in support of its contention that the dimpled holes do not advance the merchandise beyond the form of sheets. In that case, the appellate court affirmed this court's holding that steel sheets lacquered on one side came within the provisions of paragraph 304 of the Tariff Act of 1930 for "sheets and plates and steel not specially provided for," as claimed; rather than as articles not specially provided for, composed of steel, whether partly or wholly manufac-

tured, under paragraph 397 of the act, as classified. The appellate court pointed out (31 CCPA at pages 96–97) : "[t]he fair purport of the testimony * * * is that they [sheets] are used in the manufacture of various articles," and that the sample of the merchandise was a potent witness "that various types of articles can be stamped or manufactured from the sheets." The court, therefore, did not regard the process of applying the lacquer as being of any particular significance as to the issue involved, and concluded that the resulting product was a steel sheet coated on one side.

We regard *Globe* as readily distinguishable from the present case. While the process of lacquering the sheets in *Globe* did not remove them from their status as a *material* from which "various types of articles can be stamped or manufactured," we are clear that the articles in the present case were advanced in condition for a particular commercial use, and were not "used in the manufacture of various articles." The testimony of plaintiff's witnesses as to the suitability of the articles for fences, patio roofs, retaining walls, etc. is unconvincing in the absence of any showing that they were, in fact, actually sold and used for those purposes in something more than fugitive or isolated instances.

Plaintiff has also noted that the holes in the articles were punched and dimpled during and not subsequent to the process of manufacture of the sheets, and were utilized to hang them on a conveyor rack while they were being painted. From that fact, it is argued that since steel sheets which have been painted are classifiable as sheets, "a step in the manufacturing process which facilitates the painting of sheets is not such a step which can remove them from classification as sheets." However, it may be fairly inferred from the testimony and the sample in evidence (exhibit 1) that the series of seven dimpled holes at the ends of the article were intended to facilitate the joining together of the ends of the articles to form a wall for a wading pool, and that the utilization of the holes in the painting process was merely incidental. Under these circumstances, we do not regard the punching and dimpling of the holes as part of the painting process, but instead as an advancement of the articles toward their ultimate use.

We conclude, accordingly, that the imported merchandise does not fall within the provisions of subpart B, part 2, schedule 6, TSUS, for steel sheets, under which plaintiff claims.

Finally, we deal with plaintiff's alternative claim that the merchandise is classifiable under the provision for "Angles, shapes, and sections" under item 609.84. To be classifiable under that provision, merchandise must be a basic shape or form of iron or steel which does not conform completely to TSUS specifications for the various products provided for in subpart B, part 2, schedule 6 such as sheets. See headnote 1, part 2 and headnotes 1 and 3(j), subpart B, part 2, schedule

6. Thus, the question posed is whether the merchandise herein is a sheet of steel which does not conform completely to TSUS specifications.

Since we have heretofore determined that the imported merchandise is not a sheet, but an article made from a sheet and dedicated to a particular use, it follows that it cannot be considered a sheet which does not conform completely to TSUS specifications. Plaintiff's alternative claim under item 609.84, therefore, must be overruled.

All other claims of plaintiff, having been abandoned, are dismissed.

Judgment will be rendered in accordance with the conclusions expressed above.