(C.D. 2491)

PISTORINO & COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 10, 1964)

*Henry L. Ziegel* for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Mollie Strum,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge The letter of the collector of customs transmitting the above protest to the court states that the merchandise in controversy "* * * was classified in liquidation as Metal stampings as Latch Needles." Duty was assessed thereon at the rate of 30 per centum ad valorem, plus $1 per thousand, pursuant to the provisions of paragraph 343 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 343), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, supplemented by Presidential notification, 86 Treas. Dec. 337, T.D. 52820.

It is claimed by plaintiff that the merchandise is not latch needles but consists of steel stamped shapes, not advanced in value or condition by any process or operation subsequent to the process of stamping, valued at above 16 cents per pound, and dutiable at 12½ per centum ad valorem in paragraph 304 of said act (19 U.S.C. § 1001, par. 304),

as modified by the Torquay protocol, *supra,* and T.D. 52763. It is alternatively claimed that said merchandise should be classified within the provision for articles or wares, not specially provided for, composed wholly or in chief value of steel, in paragraph 397 of said act (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and dutiable at the rate of 19 per centum ad valorem.

The pertinent provisions of the paragraphs above cited read as follows.

Paragraph 343 of the Tariff Act of 1930, as modified by the Torquay protocol, *supra:*

Latch needles_____ $1 per 1,000 and
30% ad val.

Paragraph 304 of said act, as modified, *supra:*

* * * stamped shapes, not advanced in value or condition by any process or operation subsequent to the process of stamping; * * * all the foregoing valued over 16 cents per pound_____  12½% ad val.

Paragraph 397 of said act, as modified, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*        \*        \*        \*        \*        \*        \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*        \*        \*        \*        \*        \*        \*

Not wholly or in chief value of tin or tin plate:
Carriages, drays * * *

\*        \*        \*        \*        \*        \*        \*

Other, composed wholly or in chief value of iron, steel * * *_____ 19% ad val.

At the trial two witnesses were called, both of whom testified on behalf of plaintiff.

The first witness, Richard L. Gysan, president of Gysan Associates, the real party in interest, testified that he was a manufacturers' representative dealing in electronic materials and metal stampings; that he ordered the merchandise in controversy under the description of metal stampings and sold it by the same description to the Laconia Needle Co.; that said merchandise is ordered by specification describing its size and shape in order to get a blank piece of steel that would suggest its eventual use.

Plaintiff's second witness, Howard L. Bacon, testified that he has served in various capacities, as mechanical engineer, general man-

ager, and supervisor of the manufacturing operations of the Laconia Needle Manufacturing Co., Laconia, N.H., since 1947. He was familiar with the foreign invoice covering the shipment of the articles in controversy and produced samples which were received in evidence as plaintiff's exhibits 1, 2, and 3, and identified by the invoice description as follows:

Plaintiff's exhibit 1—Vosata 100.100/4.

Plaintiff's exhibit 2—Wosa 81.100/4.

Plaintiff's exhibit 3—VO 76.68/4.

Bacon testified that his company makes articles of metal such as wire products, pointed needles, and latch needles, which are sold to the textile, electronics, and machinery industries. He testified that articles similar to exhibits 1, 2, and 3 were made in their plant which produced what is known as a Jacquard Dial CH Spreader, made from an article such as exhibit 1, which was received in evidence as plaintiff's illustrative exhibit 4. Another item described as Jacquard Dial Blanks No. 75 and No. 1814 was received in evidence as plaintiff's illustrative exhibit 5. Plaintiff's illustrative exhibit 6 was received in evidence and described as a Servo-Stop Jack SJ 800L. Plaintiff's illustrative exhibit 7 was received in evidence as an aid in showing the process in making a latch needle from a basic strip of metal, which the witness described as follows—

A latch needle this style originates from a piece of strip metal which is passed through a punch press which results in a metal stamping. It is then straightened, polished and goes on to various machining operations which include milling. The needle must be milled with a certain profile, a profile milling machine. Then it must be deburred and it is then passed through a swaging machine. Then it passes through other operations which include cutting the needle to length, cutting a point on it, and setting the position of the point. It passes on through another machine which goes through a slitting operation, cutting a slot into the needle. The next major operation called the back punching where we punch through the needle to form a slot in the back. Here again, it must go through a deburring operation. The next operation is known as a hook bending operation. There is a hook bent on the end of the needle. On other machines, a small latch has been made. Now the latch is brought together with the needle and assembled with the needle in a punching operation. The latch now goes through a grinding operation to shape it and it is also smoothed and deburred again. It is then passed through hardening furnaces and annealing furnaces to become a tempered piece of metal. It then runs through tumbling operations for cleaning and polishing. Then, they go through a straightening operation again. Then they are inspected and boxed as latch needles.

It is clear from the briefs of the adversary parties that the collector's classification of the subject merchandise was made pursuant to the decision of the Secretary of the Treasury reported in 92 Treas. Dec. 41, T.D. 54311(1), which reads at page 42—

(1) *Latch needles, unfinished.*—Following the principle of T.D. 49425 (73 Treas. Dec. 359) [25 CCPA 330] and C.D. 492 (6 Cust. Ct. 340), unfinished latch

needles are classifiable under the eo nomine provision for latch needles in paragraph 343, Tariff Act of 1930, as modified, with duty at the rate of $1 per thousand plus 30 percent ad valorem, rather than under the provision for articles of metal, not specially provided for, in paragraph 397, Tariff Act of 1930, with duty at the rate of 21 percent ad valorem.

Inasmuch as this decision results in the assessment of duty at a rate higher than that which has heretofore been assessed under an established and uniform practice, it shall be applied only with respect to such or similar merchandise entered, or withdrawn from warehouse, for consumption after 90 days after the date of publication of this abstract. * * * [Italics quoted.]

It does not appear in the above quotation what the previous classification was or how long it had been an "established and uniform practice" which might be an important consideration in a doubtful case.

Defendent in its brief relies primarily upon the *Waltham Watch* and *Barber* cases cited in the decision of the Treasury Department, *supra*, although other judicial authorities are considered as well.

It is the opinion of the court that vital factual differences between the cases cited by the defendant and the instant one clearly distinguish them.

The guiding principle flowing through those cases was the singleness of use of the merchandise involved. To illustrate this point, in the *Waltham* case the article in issue was an unfinished pillar plate which had no other use than as a pillar plate.

In the *Barber* case, the court was called upon to decide whether a certain watercraft was a motorboat when imported without a motor.

In *F.B. Wilcon v. United States*, 10 Cust. Ct. 457, Abstract 48282, cited by defendant, the court held that motorboat hulls imported without engines are properly classifiable as motorboats, following the *Barber* case.

In none of the three cases above cited was a plurality of use of a commodity involved—and the same is also true of other cases cited by defendant which we deem unnecessary to analyze here.

A review of Bacon's testimony discloses that the items in controversy here do not, in their condition as imported, forecast a singleness of use in the production of latch needles. On the contrary, various articles other than latch needles are made from pieces of metal such as exhibits 1, 2, and 3. For instance, Bacon produced an article identified as "Jacquard Dial CH Spreaders" (illustrative exhibit 4) which was made from a stamping such as exhibit 1. Another article identified as "Jacquard Dial Blanks No. 75 and No. 1814" (illustrative exhibit 5) was made from a stamping such as exhibit 1. An article identified as "Servo-Stop Jack SJ 800L" (illustrative exhibit 6) also was made from stampings such as exhibit 1. Bacon also testified that illustrative exhibits 4 and 5 could likewise be made from exhibit 2; that illustrative exhibit 6 could be made from exhibit 3; that articles similar to illus-

trative exhibits 4, 5, and 6 could also be made from stampings of the type of exhibits 1, 2, and 3.

With respect to uses, Bacon stated that illustrative exhibits 4, 5, and 6 were employed in textile knitting machines; that exhibit 4 was used in certain types of knitting operations, replacing the needle in the machine; and that illustrative exhibit 6 was used in conjunction with a latch needle in a knitting machine.

This line of proof brings the case under the controlling influence of the authorities cited by plaintiff in its brief, notably, *United States* v. *National Importing Co. (Inc.) et al.*, 12 Ct. Cust. Appls. 186, T.D. 40169, wherein certain pressed amber resembling pipe bits and cigarette holders had been classified as smokers' articles. The court upset that classification and held that, since the articles were used not only for making smokers' articles but also in the manufacture of jewelry, they should be classified as "amberoid, unmanufactured."

In the course of its opinion, the court observed, certain portions thereof being stressed here—

The authorities seem to be unanimous in their support of the proposition that in order to take the importation out of paragraph 11 as amberoid, unmanufactured, it must be found that they were manufactured to such extent that they were committed or dedicated to a use as *smokers' articles alone*, and that if they had not been so manufactured when imported, *and were in such form that they could readily be used for other purposes and were so used*, they should be classified as amberoid, unmanufactured.—United States v. Lyon & Healy (4 Ct. Cust. Appls. 438; T.D. 33873), Wyman v. United States (T.D. 28924), Athenia Steel & Wire Co. *v. United States* (1 Ct. Cust. Appls. 494; T.D. 31528), Worthington v. Robbins (139 U.S. 337).

The weight of judicial authority above quoted and decisions cited therein lead us to conclude that the subject merchandise is not classifiable as latch needles either finished or unfinished in paragraph 343.

We are likewise of the opinion that the evidence before us does not entitle the merchandise in controversy to classification as "stamped shapes" in paragraph 304. That provision is limited to stamped shapes, "not advanced in value or condition by any process or operation subsequent to the process of stamping," valued over 16 cents per pound.

There is nothing in the record to show how the importations or their equivalent were manufactured in the country of origin; and while Bacon gave testimony relating to the process of manufacture of stampings in this country his testimony does not indicate at what point the stamping process was completed, with the result that we are unable to determine from the evidence whether the imported items were "advanced in value or condition by any process or operation subsequent to the process of stamping." Consequently, that claim of plaintiff has not been sustained.

It is obvious from the circumstances of this case that when the collector classified the importation as consisting of latch needles he

was of the opinion that they were not stampings which had not been "advanced in value or condition * * * subsequent to the process of stamping." Cf. *The Singer Manufacturing Company* v. *United States*, 22 Cust. Ct. 21, C.D. 1152, affirmed *United States* v. *The Singer Manufacturing Company*, 37 CCPA 104, C.A.D. 427.

The remaining question is whether the importation should be classified in the catchall provisions of paragraph 397, as modified, for articles, not specially provided for, in chief value of metal.

It is agreed between the adversary parties that the merchandise is in chief value of steel. Therefore, in the absence of a more specific enumeration, the merchandise is relegated to the provision in said paragraph 397 where it is made dutiable at the rate of 19 per centum ad valorem, as alternatively claimed by plaintiff. That claim is sustained, and judgment will issue accordingly.