**F. W. MYERS & CO., Inc.**

v.

**UNITED STATES.**

C.D. 4370; Protest No. 65/19403–8162 against the decision of the collector of customs at the port of Detroit.

United States Customs Court,
First Division.

July 27, 1972.

Walter E. Doherty, Jr., Boston, Mass., for plaintiff.

Harlington Wood, Jr., Asst. Atty. Gen. (Mollie Strum, New York City, trial attorney), for defendant.

Before WATSON and MALETZ, Judges and DONLON, Senior Judge.

DONLON, Senior Judge:

The merchandise in issue, imported at Port Huron from Canada, is described in the entry papers as Western White Spruce Lumber. Of the total shipment of 37,975 board feet so entered, the customs officials found that 34,375 board feet were, in fact, not only sawed, tongued and grooved, but also cut to size for use in making box spring frames. The 34,375 board feet of lumber were classified in liquidation as parts of furniture, wholly or partly finished, dutiable under paragraph 412, Tariff Act of 1930, as modified, at 17 per cent ad valorem.

The balance of the shipment, evened off to 4,000 board feet by mutual consent, was assessed with duty at the rate of 25 cents per thousand board feet, under paragraph 401, as modified, plus internal revenue tax at the rate of 75 cents per thousand board feet.

There are two claims. We proceed to consideration of the first claim, raised by protest, which is that the 34,375 board feet assessed as parts of furniture should be classified under paragraph 401, as sawed spruce lumber. It is the gist of this claim that tonguing, grooving and cutting to bedframe size, prior to importation, did not constitute such processing as to bring the lumber within the purview of paragraph 412.

Inasmuch as entry was in February 1963, there is no question that it is the Tariff Act of 1930, and not TSUS which is applicable to this issue.

The competing tariff provisions are as follows:

Paragraph 412, Tariff Act of 1930, as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade (T.D. 54108):

Furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, and not specially provided for:

&ast; &ast; &ast; &ast; &ast; &ast;

Parts of any of the foregoing.............. 17% ad val.

Paragraph 401 Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade (T.D. 51802):

Sawed lumber and timber not specially provided for, if of fir, spruce, pine, hemlock, or larch............ 25¢ per 1000 ft., board measure

Facts not in dispute are that this lumber was ordered to be cut in certain sizes; that it was so cut; that these sizes were intended for use in assembling frames for box springs; that, as imported, the lumber was bundled in lots according to size, kept together by wire bands, for assembling such frames for 1,600 double beds and 1,257 single beds; that the order and its specifications were from Bernson Lumber Company, and immediately on importation the lumber was shipped to the National Frame Company, of Carnegie, Pennsylvania, a customer of Bernson; that the lumber was shipped to that company and used by it for the intended purpose; that in assembling the frames the imported pieces were fitted together, and then the corners were cut and rounded to conform to the mattress to be placed on the frame. Each frame, assembled at the Pennsylvania plant, consisted of the four sides and cross slats, all part of the imported lumber and not further processed by the National Frame Company other than by assembling and cutting to round the four corners.

Plaintiff's argument appears to be twofold: that this lumber is lumber and not a part of anything; and, second, that if held to be a part of a box spring frame, such part is not, in the tariff sense, a furniture part.

How much dedication to use is necessary to convert an article into a part of something, has been the subject of considerable tariff litigation. In each case, the terms and scope of the tariff provision for the part are determinative of the issue.

The briefs filed by counsel and intensive research in chambers, fail to disclose any case in which the competition was between the two classifications here before us. However, the degree of dedication that changes, for tariff purposes, a raw or unmanufactured article into some fabricated article for which there is specific tariff provision, has been considered many times.

In general, if lumber has been processed to the extent that it has become the article for which the lumber was intended, then it is dutiable as the manufactured article and not as lumber,

as Judge Maletz pointed out in A. N. Deringer, Inc. v. United States, 61 Cust.Ct. 66, C.D. 3530, 287 F.Supp. 1016 (1968). To quote from his opinion in that case:

> * * * in United States v. C. S. Emery & Co., 18 CCPA 208, T.D. 44399 (1930), doorsills and stair rails so manufactured by sawing, planing, tonguing and grooving, as to finish them for the purpose intended except to cut them to the lengths desired for certain sized doors, in case of the doorsills, and the cutting to length and fitting of the ends, in case of the stair rails, were held to be no longer lumber material for making anything, but were the things themselves and were accordingly held to be properly classified as manufactures of wood. The court in *Emery* (18 CCPA at 211) adverted to various cases where merchandise was held classifiable as lumber even though it had been dedicated to a certain use, but distinguished each on the basis that the merchandise there involved "had not been processed to the extent that it became the article for which the material was intended. The ceiling boards were not ceilings, the flooring boards were not floors, and the cello material was not the backs, tops or sides for cellos. Neither were the cedar pencil blocks converted into pencils or any part of pencils." [Pp. 72–73, 287 F. Supp. p. 1021.]

In the more recent case of Border Brokerage Company, Inc. v. United States, 68 Cust.Ct., C.D. 4325 (1972), Judge Rosenstein cited the *Emery* case, *supra*, in support of a like proposition.

■■ The record before us is clear that the lumber, as imported, was not merely sawn, planed and grooved, but had also been cut to lengths desired for box spring frames, and these lengths were finished except for cutting, after importation, to round the corners of the frames. That the boards were parts of such frames, which in turn are parts of beds—articles of furniture—does not make them any the less classifiable as parts of furniture. For it is well established that, for tariff purposes, a part of a part is dutiable as a part of the whole.

In Gallagher & Ascher Company v. United States, 54 Cust.Ct. 141, C.D. 2522 (1965), the Customs Court held that lock cylinders, which were parts of automobile gas tank covers, were parts of automobiles. The court cited United States v. American Express Co., 29 CCPA 87, C.A.D. 175 (1941), for the principle that "an integral part of an integral part of an article is an integral part of such article."

In Richardson Co. v. United States, 8 Ct.Cust.Appls. 179, T.D. 37289 (1917), it was held that certain carbureters which were integral parts of motors which, in turn, were integral parts of farm tractors, were properly classified as integral parts of agricultural implements. So, too, in Landay Bros. v. United States, 5 Ct.Cust.Appls. 498, T.D. 35151 (1915), needles for phonographs were held to be necessary parts of reproducers, and as a reproducer was an indispensable and integral part of a phonograph, the needles were integral parts of phonographs.

Upon the record before us and for the reasons stated above, we hold that 34,375 board feet of lumber under protest are parts of furniture, within the purview of paragraph 412 of the Tariff Act of 1930, as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade (T.D. 54108).

■ Plaintiff has failed to establish by competent proof its claimed classification, and hence has failed to overcome the presumption that the classification on liquidation was correct.

Inasmuch as we affirm the protested classification, we need not discuss the second claim, raised in plaintiff's brief but not in its protest, a claim which is dependent on our sustaining the protest claim. This we have not done.

The protest is overruled. Judgment will be entered accordingly.