(C.D. 4875)

OVERTON & CO., PLAINTIFF v. UNITED STATES, DEFENDANT

Court No. 77-6-01002

(Decided September 23, 1980)

*Doherty and Melahn*, Esqs. (*William E. Melahn* and *Peter T. Middleton*, Esqs. of counsel) for the plaintiff.

*Alice Daniel*, Assistant Attorney General, *Joseph I. Liebman*, Attorney in Charge, Field Office for Customs Litigation (*John J. Mahon*, Esq., at the trial and *James A. Resti*, Esq., on the brief), for the defendant.

NEWMAN, Judge: The issue in this case concerns the proper tariff classification for certain imported steel products described on the commercial invoice included in the official entry documents as 'Hot Rolled Sectional Steel, alloyed, not annealed, our brand '65 EN 2 G', acc. to AISI 8665, Profile D–84555, in bars of 89½'' with shorts max. 5%, Tol. +1'', our no. 567, ends sawn". The subject merchandise was exported from West Germany and entered at the Port of New York in 1975. Plaintiff, a customhouse broker, entered the merchandise for the account of Wetherell Bros. Co., the ultimate consignee.

In liquidating the entry, Customs classified the importation under the provision in item 608.52, TSUS, for bars of alloy steel, and assessed duty at the rate of 10.5 per centum ad valorem, plus additional duties on the chromium and molybdenum content.[1] Plaintiff pri-

---

[1] Additional duties were assessed on the chromium and molybdenum content at the rates prescribed in items 607.01 and 607.02, TSUS. See headnote 4, subpart B, part 2, schedule 6. These additional duties are not contested.

marily claims that the merchandise is properly dutiable under item 609.82, TSUS, as angles, shapes, and sections of alloy iron or steel, at the rate of 0.1 cent per pound plus 2 per centum ad valorem, plus additional duties on the chromium and molybdenum content. Alternatively, plaintiff claims that the merchandise is dutiable as parts for pulp or paper machines under either item 668.04, TSUS, at the rate of 7 per centum ad valorem, or under item 668.06, TSUS, at the rate of 3.5 per centum ad valorem.

Plaintiff also advances the claim that the Government's classification of the merchandise under item 608.52, TSUS, constituted a change in a prior established and uniform practice of classifying the subject merchandise under item 609.82, TSUS, without notice in violation of section 315(d) of the Tariff Act of 1930, as amended (19 U.S.C. 1315(d)).

For the reasons indicated hereinafter, plaintiff's primary claim under item 609.82, TSUS, is sustained.

STATUTES INVOLVED

*Schedule 6, Part 2, Subpart B, TSUS*
 *Subpart B headnotes:*

\* \* \* \* \* \* \*

3. *Forms and condition of iron or steel.—* For the purposes of this subpart, the following terms have the meanings hereby assigned to them:

\* \* \* \* \* \* \*

(d) *Bars:* Products of solid section not conforming completely to the respective specifications set forth herein for blooms, billets, slabs, sheet bars, wire rods, plates, sheets, strip, wire, rails, joint bars, or tie plates, and which have cross sections in the shape of circles, segments of circles, ovals, triangles, rectangles, hexagons, or octagons. Deformed concrete reinforcing bars are hot-rolled steel bars, of solid cross section, having deformations of various patterns on their surfaces.

\* \* \* \* \* \* \*

(j) *Angles, shapes, and sections:* Products which do not conform completely to

the respective specifications set forth
herein for blooms, billets, slabs, sheetbars,
bars, wire rods, plates, sheets, strip, wire,
rails, joint bars, or tie plates, and do not
include any tubular products.

\*     \*     \*     \*     \*     \*     \*

*Classified:*

Bars of steel:

\*     \*     \*     \*     \*     \*     \*

Other bars:

\*     \*     \*     \*     \*     \*     \*

608.52          Alloy steel_____ 10.5% ad val.+ additional duties.

*Primary claim:*

Angles, shapes, and sections, all the
foregoing, of iron or steel, hot-rolled,
forged, extruded, or drawn, or cold-
formed or cold-finished, whether or not
drilled, punched, or otherwise ad-
vanced; sheet piling of iron or steel:
Angles, shapes, and sections:
Hot-rolled; or, cold-formed and
weighing over 0.29 pound per
linear foot:
Not drilled, not punched,
and not otherwise ad-
vanced:

\*     \*     \*     \*     \*     \*     \*

609.82          Alloy iron or steel_____ 0.1¢ per lb. + 2% ad val. + additional duties

*Alternative Claims:*
*Schedule 6, Part 4, Subpart D:*
Machines for making cellulosic pulp,
paper, or paperboard; machines for
processing or finishing pulp, paper,
or paperboard, or making them up
into articles:

\*     \*     \*     \*     \*     \*     \*

Parts of the foregoing machines:
668.04          Bed plates, roll bars, and other
stocktreating parts for pulp
or paper machines._____ 7% ad val.

Other:
668.06          Parts of machines for making
cellulosic pulp, paper or paper-
board_____ 3.5% ad val.

*19 U.S.C. 1315*
§ 1315. Effective date of rates of duty.

\*       \*       \*       \*       \*       \*       \*

(d) No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties, \* \* \*.

## THE RECORD

At the trial, plaintiff presented the testimony of four witnesses: James Harvey McKenney III, general manager in charge of sales and purchasing for Wetherell Bros. Co.; Reinhold Schempp, retired employee of the Crucible Steel Co. of America (presently called the Crucible Specialty Division of Colt Industries); Harvey McKenney, president of Wetherell Bros. Co.; and Ralph E. Baldwin, a consultant with Black Clawson Co. Additionally, plaintiff introduced in evidence the official entry papers as an unnumbered exhibit and 14 numbered exhibits. Defendant called no witnesses, but introduced into evidence two exhibits.

The pertinent facts are:

Plaintiff's profile D84555, known as a "Jordan profile", or "Jordan bar", is ¼ inch thick, 2¾ inches wide, and 89½ inches in length. The cross sectional shape of the merchandise, as depicted by plaintiff's exhibit 1, is set forth below:

Jordan bars are a specialty rather than a stock item, and were used only for incorporation in a tapered plug of a Jordan Refiner, which is used to grind paper or prepare paper stock. A double spur or bead projects from the top and bottom horizontal surfaces of the profile D84555 and runs the full 89½-inch length of the material. This double bead or spur is made to precise specifications as to the location and height, and is essential to the use of the Jordan bars in Jordan Refiners.

The D84555 profiles must be processed after importation before they can be used as parts of Jordan Refiners. Black Clawson Co., who purchased the imported merchandise from Wetherell, processed it for installation in a tapered plug of a Jordan Refiner. After the profiles were taken from storage, they were cut into two pieces, "to make a

long and a short Jordan bar" (R. 126). These pieces were then trimmed, punched, beveled, and their bottom edges ground. Some customers of Black Clawson required, in addition to the foregoing processing, heat treating of the material, and often the ultimate customer (papermill) put sand on the material which, then, was further ground. Each set of Jordan bars was custom-made for each Jordan machine.

Prior to 1966 the merchandise was classified by Customs as bars; from 1966 to the entry in this case in 1975, the merchandise was classified as shapes; and since the entry in this case, the merchandise has been classified by Customs as bars. Wetherell received no notice concerning the change in classification of the merchandise in 1975.

Finally, there is no dispute that the subject merchandise is an alloy iron or steel shape, hot-rolled (see paragraph 3 of the complaint and of the answer), weighing over 0.29 pound per linear foot; and that it was not drilled, punched, or otherwise advanced.

## PLAINTIFF'S CONTENTIONS

Plaintiff primarily contends that the Jordan bars are shapes within the meaning of that term as defined in headnote 3(j) of schedule 6, part 2, subpart B, TSUS, and are classifiable under item 609.82, TSUS. Alternatively, plaintiff argues that since the merchandise is dedicated to use as parts of Jordan Refiners, it is classifiable either as stock-treating parts for pulp or paper machines under item 668.04, TSUS, or as other parts of machines for making paper under item 668.06, TSUS. Plaintiff also maintains that the Government did not follow the procedure prescribed in section 315(d) of the Tariff Act of 1930, as amended, for changes in an established and uniform practice in classifying the imports under item 609.82, TSUS.

## DEFENDANT'S CONTENTIONS

Defendant insists that the merchandise falls within the definition of "bars" assigned to that term by headnote 3(d) of schedule 6, part 2, subpart B, TSUS, and therefore the merchandise was properly assessed under item 608.52, TSUS. Further, defendant argues that the merchandise constitutes a material, and as such, is precluded from classification as parts under item 668.04 or item 668.06, TSUS. However, according to defendant, if the imports are parts, they are classifiable. as stock-treating parts within the purview of item 668.04, TSUS. Lastly, respecting plaintiff's claim under section 315(d), defendant urges that there is no evidence of a finding nor of the existence of an established and uniform practice of classification of the merchandise under item 609.82, TSUS.

## OPINION

### I

At the outset, it should be noted that we are not required to as-

certain the common meaning of the term "bar" or "shape," since those terms have been statutorily defined. Such statutory definitions are, of course, determinative of the scope of the tariff provisions for "bars" and "angles, shapes, and sections."

Thus, we first address the issue of whether the imports fall within the definition of "bars" (as classified by Customs) assigned to that term in headnote 3(d), schedule 6, part 2, subpart B. I agree with defendant's contention that if the subject merchandise is encompassed by the definition of "bars" in headnote 3(d), its classification as "shapes" is precluded by the definition of "angles, shapes, and sections" in headnote 3(j).

The term "bars" is defined in headnote 3(d) as:

> Products of solid section * * * which have cross sections in the shape of circles, segments of circles, ovals, triangles, rectangles, hexagons, or octagons.

The only geometric shape mentioned in headnote 3(d) that is claimed applicable by defendant is the rectangle. Plaintiff vigorously disputes that the merchandise has a cross section in the shape of a rectangle, pointing specifically to the double bead or spur protruding from the flat surfaces and running the length of the profiles.[2]

This issue under headnote 3(b) as to whether the shape of the cross section is rectangular is best resolved by an examination of a sample, as represented by plaintiff's exhibit 1. *Webster's Third New International Dictionary*, Unabridged (1966), page 1899, defines the term "rectangle" as a "parallelogram all of whose angles are right angles." Plainly, by virtue of the protruding double bead or spur, the cross section of exhibit 1 is not the shape of a rectangle. Moreover, there is nothing in the record suggesting that the double bead or spur is an aberration, unintended, or is removed after importation as useless. On the contrary, the record clearly demonstrates that the double bead in the D84555 profile is included in its design specifications and is essential for its use in the Jordan Refiner. Defendant did not offer any evidence by way of testimony or otherwise to show that the iron and steel industry recognizes the cross-sectional shape of the merchandise to be a rectangle.

Rather, defendant posits that in determining the cross-sectional shape of the merchandise, the double bead or spur should be ignored as a matter of law. This hypothesis is predicated upon the inclusion in headnote 3(d) of a definition of "deformed concrete reinforcing bars." A sample of a deformed concrete reinforcing bar was received in evidence as defendant's exhibit A. An examination of exhibit A reveals

---

[2] Plaintiff has raised no issue concerning the rounded sides of exhibit 1, and that aspect of the exhibit has been disregarded for the purposes of the decision in this case.

that it has a double spur as well as a spiral pattern running the length of the bar. Nonetheless, I am unable to agree with defendant's reasoning that because headnote 3(d) expressly includes a definition of deformed concrete reinforcing bars, the double bead on the subject merchandise should be disregarded in determining its cross-sectional shape. By specifically including a definition of deformed concrete reinforcing bars in headnote 3(d), it is apparent Congress recognized that these specialized bars, because of their "having deformations of various patterns on their surfaces", did not fit the general definition assigned to bars.[3] Hence, I see no inference from the specific inclusion of the reinforcing bars in headnote 3(d) that Congress intended to include in the definition of bars other merchandise not possessing the required cross-sectional shapes.

Defendant also urges that the double spur be disregarded on the basis that headnote 3(d) does not require the cross section of the merchandise be perfectly rectangular, circular, etc., but merely "that the product have a cross section in the shape of a rectangle, circle, ete." (brief at 21). Defendant has not cited any legislative history or other authority that shows Congress' intention to make any distinction between a rectangular cross section and a cross section in the shape of a rectangle.

The short of the matter is that the cross section of the subject merchandise does not conform to the shape specifications set forth in headnote 3(d) for bars, and consequently the Government's classification of the merchandise under item 608.52, TSUS, was erroneous. It therefore follows that the merchandise is not precluded from classification as "angles, shapes, and sections" as defined in headnote 3(j), schedule 6, part 2, subpart B, TSUS.

## II

We now turn to plaintiff's claims. I have concluded that the merchandise is a shape properly dutiable under item 609.82, TSUS, and thus plaintiff's primary claim is sustained.

Although the Jordan bars were ultimately dedicated and used as parts of Jordan Refiners, in their condition as imported they required substantial additional processing before they could be used in Jordan machines. In point of fact, Jordan bars must be custom-made for the particular Jordan machine in which they are to be installed. Hence, the D84555 profiles in their imported condition were materials rather than parts, and since they meet the requirements of headnote 3(j), they are properly classifiable under item 609.82, TSUS.

In *John V. Carr & Son. Inc.* v. *United States*, 72 Cust. Ct. 19, C.D.

---

[3] It is also noted that in 1975 deformed concrete reinforcing bars were provided for eo nomine in items 608.40 through 608.42, TSUS.

4500 (1974), Judge Maletz exhaustively considered the tariff distinction between the TSUS provisions for angles, shapes and sections and parts, and made the following pertinent observations (72 Cust. Ct. at 27):

> It may well be that most angles, shapes and sections are ulti‾mately dedicated and used as parts of articles and that such ultimate use determines the form in which the angles, shapes, and sections are made. See *United States* v. *The Singer Manufacturing Company*, 37 CCPA 104, 106, 107, C.A.D. 427 (1950). But this scarcely means that all angles, shapes and sections are parts per se. Thus, if in its imported condition, an angle, shape or section has been processed or advanced in manufacture only to, a point where substantial additional processing is necessary before it can be used as a part of a given article, the import would not be classifiable as a part, but rather would be considered a material and thus (if meeting the other statutory requirements) classifiable under a provision for angles, shapes, and sections. See e.g., *United States* v. *The Singer Manufacturing Company, supra,* 37 CCPA 104; *Associated Metals & Minerals Corp.* v. *United States, supra,* 65 Cust. Ct. 586.

Following the rationale of *Carr, supra,* the Jordan bars are properly classifiable under item 609.82, TSUS, as "angles, shapes, and sections", and plaintiff's alternative claims under items 668.04 and 668.06 are without merit.[4]

In view of the holding herein, it is unnecessary to reach plaintiff's claim that there was an established and uniform practice from 1966 to 1975 of classifying the Jordan profiles under item 609.82, which the Government changed without giving the notice required by section 315(d) of the Tariff Act of 1930, as amended.

For the reasons stated herein, plaintiff's primary claim under item 609.82, TSUS, is sustained, but its alternative claims are dismissed. Judgment will be entered accordingly.

(C.D. 4876)

---

[4] It is well established that the mere fact that imported merchandise is dedicated to use in making particular articles or parts does not take the merchandise out of the material class. See, e.g., *The Harding Co, et al.* v. *United States,* 23 CCPA 250, T.D. 48109 (1936) (automobile brake lining); *American Import Co.* v. *United States,* 26 CCPA 72, T.D. 49612 (1938) (fishing leader gut); *Bendix Mouldings, Inc.* v. *United States.* 73 Cust. Ct. 204, C.D. 4576, 388 F. Supp. 1193 (1974) (wood molding for picture or mirror frames).